IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

|  |  |  |
|---|---|---|
| DEMETER TECHNOLOGY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:10-cv-0209-TJW |
| v. | ) | |
| | ) | |
| FUJITSU COMPUTER PRODUCTS OF AMERICA, INC., *et. al.*, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MOTION OF INTEGRATED GLOBAL CONCEPTS, INC.
TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

TABLE OF CONTENTS

SECTION                          HEADING                                    PAGE

INTRODUCTION ...............................................................................................1

STATEMENT OF ISSUES ...................................................................................1

FACTS RELEVANT TO JURISDICTION ...............................................................1

ARGUMENT .....................................................................................................3

    I.   DEMETER HAS FAILED TO MAKE A *PRIMA FACIE* SHOWING OF
       JURISDICTION ......................................................................................3

    II.  THE COURT LACKS PERSONAL JURISDICTION OVER IGC ...........................4

        A.  IGC Is Not Subject to General Jurisdiction in Texas ......................6

            1.  IGC Does Not Have Continuous and Systematic
               Contacts with Texas ...........................................................6

            2.  IGC Does Not Conduct Any Business in Texas ...................8

            3.  IGC's Website Does Not Confer General Jurisdiction .......9

        B.  IGC Is Not Subject to Specific Jurisdiction in Texas....................11

            1.  IGC Had Not Purposefully Directed Its Activities at
               Texas ................................................................................11

            2.  Demeter's Claim Does Not Arise out of or Relate to
               IGC's Alleged Activities in Texas .................................12

            3.  Asserting Specific Jurisdiction Over IGC Is Neither
               Reasonable Nor Fair .......................................................13

         C.  Demeter Is Not Entitled to Jurisdictional Discovery ...................14

    III.  VENUE IS IMPROPER IN THE EASTERN DISTRICT OF TEXAS ........................14

CONCLUSION.................................................................................................15

TABLE OF AUTHORITIES

PAGE

**Cases**

*Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208 (5th Cir. 2000) ........................................ 5

*Asahi Metal Ind. Co., Ltd. v. Superior Ct. of Cal., Solano Cty.*, 480 U.S. 102 (1987) ............. 9, 13

*Best Van Lines, Inc. v. Walker*, 490 F.3d 239 (2d Cir. 2007) ...................................................... 14

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ..................................................................... 5

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390 (4th Cir. 2003) .............. 14

*Cubbage v. Merchent*, 744 F.2d 665 (9th Cir. 1984) ...................................................................... 8

*Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc.*, 142 F.3d 1266 (Fed. Cir. 1998) ........................ 5

*Far West Capital, Inc. v. Towne*, 46 F.3d 1071 (10th Cir. 1995) ................................................ 12

*Hanson v. Denckla*, 357 U.S. 235 (1958) ....................................................................................... 4

*Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408 (1984) .................... 6, 7, 8, 12

*Hildebrand v. Steck Mfg. Co.*, 279 F.3d 1351 (Fed. Cir. 2002) ..................................................... 7

*Hockerson-Halberstadt, Inc. v. Propet USA, Inc.*, 62 Fed.Appx. 322, *11 (Fed. Cir. 2003)8, 10, 11

*IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537 (7th Cir. 1998) ............................... 8

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) .................................................................... 5, 7

*L.H. Carbide Corp. v. Piece Maker Co.*, 852 F. Supp. 1425 (N.D. Ill. 1994) ............................... 8

*Marynard v. Philadelphia Cervical Collar Co., Inc.*, 18 Fed. Appx. 814 (Fed. Cir. 2001) .......... 9

*Mink v. AAAA Dev. LLC*, 190 F.3d 333 (5th Cir. 1999) .................................................................. 9

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865 (5th Cir. 2001) ............. 3, 4

*Pennington Seed, Inc. v. Prod. Exchange No. 299*, 457 F.3d 1334 (Fed. Cir. 2006) .................... 5

*People Solutions, Inc. v. People Solutions, Inc.*, 2000 WL 1030619, *4 (N.D. Tex. July 25, 2000) ........................................................................................................................................ 11

*Powerhouse Productions, Inc. v. Widgery*, 564 F. Supp. 2d 672 (E.D. Tex. 2008) ...................... 5

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355 (Fed. Cir. 1998) ............. 8, 14

*Religious Tech. Ctr. v. Dell Liebreich*, 339 F.3d 369 (5th Cir. 2003) ............................................ 4

*Revell v. Lidov*, 317 F.3d 467 (5th Cir. 2002) ........................................................................... 8, 10

*Singletary v. B.R.X., Inc.*, 828 F.2d 1135 (5th Cir. 1987) ............................................................... 8

*Trintec Industries, Inc. v. Pedre Promotional Products, Inc.*, 395 F.3d 1275 (Fed. Cir. 2005) ................................................................................................................................ 10, 11, 13

*Wilson v. Belin*, 20 F.3d 644 (5th Cir. 1994) ................................................................................. 5

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) ...................................... 4, 6, 12

**Statutes**

28 U.S.C. § 1391(c) ............................................................................................................... 14, 15

28 U.S.C. § 1400(b) ..................................................................................................................... 14

**Rules**

FED. R. CIV. P. 12(b) ..................................................................................................................... 15

NOW COMES Integrated Global Concepts, Inc. (*"IGC"*), by and through its attorneys, Chapman and Cutler LLP, and for its Motion to Dismiss the Complaint of Demeter Technology, LLC (*"Demeter"*) for Lack of Personal Jurisdiction (the *"Motion"*), respectfully states as follows:

## INTRODUCTION

IGC is a small business with six employees which operates out of the ground floor of a house on Chicago's north side.  As described below, IGC will face a substantial hardship if forced to litigate in Texas.  IGC is incorporated in Illinois and maintains its only place of business in Illinois, from which it conducts all of its business.  It does not have any offices or facilities in Texas.  It does not target Texas in its marketing or advertising.  It has not directed any activities at Texas and does not conduct the allegedly infringing activities in Texas.  It has no employees in Texas.  It is not licensed, and has never applied for a license, to do business in Texas.  It does not pay, and is not obligated to pay, taxes in Texas.  As set forth below, IGC lacks minimum contacts with Texas, and this court's exercise of personal jurisdiction over IGC would violate due process and offend traditional notions of fair play and substantial justice.  Accordingly, IGC respectfully requests that the court dismiss it from this case for lack of personal jurisdiction.

## STATEMENT OF ISSUES

I.      Whether Demeter has carried its burden to show that the exercise of personal jurisdiction over IGC by this Court comports with due process; and

II.      Whether Demeter has alleged sufficient facts to support a finding that IGC has sufficient contacts with the Eastern District of Texas to show that venue is proper in this Court.

## FACTS RELEVANT TO JURISDICTION

Plaintiff's Complaint does not set forth any *facts* to justify jurisdiction over IGC.  Instead, Demeter offers boilerplate statements, all made upon information and belief, that IGC has

"substantial business" in this forum, that "at least a portion" of the purported infringement is in Texas and that IGC is deriving "substantial revenue" from Texas.  (*Cmplt*., ¶ 28.)  However, even if these factually barren allegations could somehow be sufficient to establish a *prima facie* case for jurisdiction, as set forth in the Declaration of John Neurauter submitted herewith, those averments are incorrect.

IGC is a small internet facsimile company in Chicago with six employees. (*Neurauter Dec*., ¶¶ 2, 3.[1])  It conducts its operations through its website (www.maxemail.com) on computer servers located in Illinois, and the site is accessible to anyone in the world who has a computer and an internet connection.  (*Neurauter Dec*., ¶ 5.)  The website enables a viewer to obtain information about IGC's electronic facsimile services and to purchase those services. (*Neurauter Dec*., ¶ 6.)  IGC then provides those services in Illinois.  (*Neurauter Dec*., ¶¶ 6, 7.) All sales and sales inquiries regarding IGC's services are handled via the Illinois-based website by IGC employees in Illinois.  *Id*.  IGC has been located in Illinois since its incorporation in 1992. (*Neurauter Dec*., ¶ 3.)

In contrast, IGC has no presence in Texas.  In Texas, IGC has no offices or facilities, maintains no customer equipment or records, neither owns nor rents any property, has no bank accounts, is not obligated to pay franchise, sales, use, or property taxes, is not licensed to do business by the Texas Secretary of State (nor has ever applied for such a license), and does not have an agent for service of process.  (*Neurauter Dec*., ¶ 8.)  IGC does not specifically target any advertising or business solicitations to Texas.  (*Neurauter Dec., ¶¶* 10, 11.)  Likewise, IGC has neither hired nor contracted with any business or individuals in Texas specifically to help drive business from Texas residents to IGC or its website; rather, IGC's website is accessible to users worldwide.  (*Neurauter Dec*., ¶ 11.)  While a fraction of IGC's customers have chosen a Texas fax number with a Texas area code (less than 6.6% of all customers), a User (as defined in the

---

[1]    The Neurauter Declaration is attached hereto as Exhibit 1.

Terms of Service attached to the Neurauter Declaration as Exhibit A) from anywhere in the world can select a Texas area code. (*Neurauter Dec*. ¶ 15.)  Only a small percentage of IGC's revenue (between 6.9% and 8.8%) is derived from that business. (*Neurauter Dec*., ¶¶ 13-15.)  But again, the services provided to those customers, just like the services provided to every other customer, are provided in Illinois. (*Neurauter Dec*., ¶¶ 5, 6, 7, 9, 14.)

Importantly, IGC's Texas-based customers can only access IGC's services through third-party telecommunication carriers. (*Neurauter Dec*., ¶ 12.)  IGC's terms of service specifically provide that IGC does not provide or resell telecommunications services. *Id*. As such, for the reasons set forth below, any contact that Texas residents have with the purportedly infringing products is too attenuated to support jurisdiction. Additionally, as noted above, the area code that a User selects is entirely independent of the location of the User. (*Neurauter Dec*., ¶ 15.)  In other words, a User in Chicago could select an area code that is in Texas, without having any connection to Texas. *Id*.  Moreover, even when a Texas area code is selected, this does not mean that a fax has been routed through Texas or that the systems processing calls to Texas area codes are even located in Texas. (*Neurauter Dec*., ¶ 15.)  As such, IGC has insufficient contacts with Texas to support jurisdiction.

ARGUMENT

I.    **DEMETER HAS FAILED TO MAKE A *PRIMA FACIE* SHOWING OF JURISDICTION**

Although Demeter's *uncontested* jurisdictional allegations must be accepted as true, such acceptance does not mean that a *prima facie* case for specific jurisdiction has been presented. As the 5th Circuit has noted, "the *prima facie* case requirement does not require the court to credit conclusory allegations, even if uncontroverted." *Panda Brandywine Corp. v. Potomac Elec. Power Co*., 253 F.3d 865, 868-69 (5th Cir. 2001) (rejecting as conclusory "information and belief" allegations that defendant knew acts would injure Texas residents). Demeter's Complaint contains just three conclusory paragraphs containing allegations against IGC, all of which are premised on insufficient "information and belief" allegations. Demeter alleges:

- "On information and belief" that IGC is an Illinois corporation with its principal place of business in Chicago, Illinois (¶ 6);

- "On information and belief" that IGC is subject to this court's specific and general personal jurisdiction   because: (i) a portion of the alleged infringement happened in Texas; and (ii) IGC solicits business and gets "substantial revenue" from Texas; (¶ 28); and

- "Upon information and belief" IGC infringes (¶ 49).[2]

Under the applicable due process standard, these "information and belief" allegations are insufficient to establish a *prima facie* case for jurisdiction. *Panda Brandywine Corp.*, 253 F.3d at 868. Further, IGC has submitted evidence contesting each and every one of these allegations in the Neurauter Declaration. As there are no facts alleged suggesting that IGC purposefully availed itself of the privilege of conducting business in Texas, or any facts suggesting that IGC has invoked the benefits and protections of Texas laws, Demeter has failed to carry its burden of establishing jurisdiction. As such, Demeter's claims against IGC must be dismissed.

## II.   THE COURT LACKS PERSONAL JURISDICTION OVER IGC

To be subject to personal jurisdiction in this court, a nonresident defendant must have purposefully directed its activities at forum residents, or purposefully availed itself of the privilege of conducting activities within the forum state. *Hanson v. Denckla*, 357 U.S. 235, 253-54 (1958) (nonresident must invoke the benefits and protections of local law); *Religious Tech. Ctr. v. Dell Liebreich*, 339 F.3d 369, 375 (5th Cir. 2003) (reaching out from Texas to other states insufficient). The "purposeful availment" requirement ensures that a nonresident will be aware that it is subject to suit in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) ("the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."). This protection prevents a nonresident from being

---

[2]    Paragraph 49, in which Demeter alleges that IGC infringes, contains the same conclusory allegation of infringement for all defendants.

haled into local court solely as a result of "random, fortuitous, or attenuated" contacts over which it had no control. *Cf., Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 480-81 (1985) (entering into 20 year franchise agreement governed by Florida law sufficient).[3]

Analysis of personal jurisdiction involves a two-step process. The Court must determine: (1) whether the Texas long-arm statute authorizes jurisdiction, and (2) whether exercise of jurisdiction is consistent with due process. *Pennington Seed, Inc. v. Prod. Exchange No. 299*, 457 F.3d 1334, 1345 (Fed. Cir. 2006) (noting that law of Federal Circuit applies in patent cases and affirming order dismissing action for failure to allege sufficient facts to make *prima facie* case for jurisdiction).[4]

This inquiry requires application of the Supreme Court's familiar two-prong test. First, the defendant must have sufficient "minimum contacts" with the forum state. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Second, the exercise of jurisdiction must not offend "traditional notions of fair play and substantial justice." *Id.* (citation omitted). It is Demeter's burden to show – by affidavits or other competent evidence – that the court can exercise either general or specific jurisdiction over IGC. *See, e.g., Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994) (noting that plaintiff bears the burden of establishing jurisdiction and that only uncontroverted allegations may be considered in evaluating the *prima facie* case); *Powerhouse Productions, Inc. v. Widgery*, 564 F. Supp. 2d 672, 677 (E.D. Tex. 2008) ("the burden of establishing the district court's jurisdiction lies with the party seeking to invoke the court's jurisdiction"). Demeter cannot meet its burden on either front. While courts sometimes elect to forego an evidentiary hearing on jurisdictional issues and credit the plaintiff's factual allegations,

---

[3]    Conversely, IGC's terms of service provide that its customers must resolve all disputes in Illinois (*Neurauter Dec.*, ¶ 9.)

[4]    Because the Texas long-arm statute confers jurisdiction to the maximum extent permitted by due process, these two inquiries fold into one: whether exercising jurisdiction comports with due process. *See Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000); *Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc.*, 142 F.3d 1266, 1270 (Fed. Cir. 1998).

such an approach would not permit the exercise of jurisdiction in this case.  Demeter alleges no facts – as opposed to legal conclusions – which point to any contact of IGC with Texas.  If the court were inclined to deny IGC an evidentiary hearing on the matter, it still cannot credit Demeter's legal conclusions or read into the Complaint facts which are not there.  IGC also respectfully submits that it would be unfair under the circumstances to forego an evidentiary hearing (to the extent that Demeter establishes an entitlement to such a hearing by introducing admissible evidence).  Here, IGC is a small business with limited resources that has been sued in a distant forum.  Before IGC should be forced to incur the substantial costs associated with this litigation, the court should assure itself that it has jurisdiction over IGC.  To find that Demeter's threadbare allegations (which have been properly controverted by affidavit testimony from IGC) are sufficient to establish personal jurisdiction would eviscerate important constitutional due process protections and would allow defendants to be dragged into costly litigation in distant courts without any meaningful investigation by the plaintiff of defendant's contacts with the forum.

**A.     IGC Is Not Subject to General Jurisdiction in Texas**

   **1.     IGC Does Not Have Continuous and Systematic Contacts with Texas**

General jurisdiction exists only when a defendant has "continuous and systematic" contacts with the forum state.  *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 416 (1984) (finding that a court did not have general personal jurisdiction over foreign corporation that sent officers to forum for a negotiating session, accepted checks drawn from a forum bank, purchased equipment from the forum, and sent personnel to the forum to be trained); *World-Wide Volkswagen,* 44 U.S. at 295 (rejecting forseeability and noting risk that "amenability to suit would travel with the chattel").  These continuous and systematic contacts must be so extensive as to make it fundamentally fair to require the defendant to answer in a

Texas court in *any* litigation arising out of *any* transaction or occurrence taking place *anywhere* in the world. *Helicopteros*, 466 U.S. at 414-415 (holding contacts insufficient).[5]

Here, Demeter's complaint is devoid of any facts describing the number and nature of IGC's contacts, and IGC has nothing approaching the continuous and systematic contacts with Texas that would give rise to general jurisdiction. As set forth above, it has no offices or other physical presence in the state, has no employees in the state, has no property in the state (either real property or personal property, such as computer servers), is not licensed to do business in the state, does not maintain any facilities or equipment in the state, has no financial accounts in the state, and otherwise simply has no real presence in Texas at all. (*Neurauter Dec.*, ¶¶8-11.)

Demeter's Complaint contains nothing of substance concerning jurisdiction over IGC. Demeter has not suggested that IGC's contacts with Texas are "continuous and systematic." Its sole relevant jurisdictional allegation is:

> *On information and belief*, Defendant IGC is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this forum, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this Judicial District.

(*Cmplt.*, ¶ 28.) (emphasis added). However, this lone allegation is itself not true. As described below, IGC's contacts with Texas, if any, are not substantial by any means and the alleged infringement does not occur in Texas.

---

[5]  The court's inquiry is fact-intensive. *See Int'l Shoe Co.*, 326 U.S. at 319 ("It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative"); *Hildebrand v. Steck Mfg. Co.*, 279 F.3d 1351, 1355 (Fed. Cir. 2002) ("We examine the number and nature of the defendant's contacts with the forum state to determine if haling them into court there comports with 'fair play and substantial justice.'") (citations omitted).

### 2.    IGC Does Not Conduct Any Business in Texas

IGC's limited business *with* Texas residents does not equate to doing business *in* Texas. *See Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002) ("[E]ven repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction – in other words, while it may be doing business *with* Texas, it is not doing business *in* Texas.") (emphasis in original); *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998) ("[D]oing business with a company that does business in [the forum state] is not the same as doing business in [the forum state].").[6]

Nor can IGC's minimal online advertising constitute doing business in Texas.  *See, e.g., Singletary v. B.R.X., Inc.*, 828 F.2d 1135, 1136 (5th Cir. 1987) ("advertising in national publications is not in itself sufficient to subject a defendant to personal jurisdiction"); *IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537, 540 (7th Cir. 1998) (the fact that SunAmerica "advertises its subsidiaries' products and services in national media that are broadcast or otherwise disseminated" in the forum state is insufficient to support general jurisdiction).

Further, it does not matter that a small number of IGC's worldwide customers have a Texas address, that IGC's customers can select Texas area codes, or that IGC derives a small percentage of its revenue from that source.  Instead, the jurisdictional focus rests on whether IGC's activity in the forum state is "continuous and systematic," a focus which demonstrates a lack of general jurisdiction here.  *See Helicopteros*, 466 U.S. at 418 (mere purchases from forum state "even if occurring at regular intervals" are insufficient to satisfy requirements of general jurisdiction); *see also L.H. Carbide Corp. v. Piece Maker Co.*, 852 F. Supp. 1425, 1433-34 (N.D. Ill. 1994) (5-8% of total sales insufficient) (citing *Cubbage v. Merchent*, 744 F.2d 665 (9th Cir. 1984) (holding that although during a four (4) month period, approximately twenty-six percent

---

[6]    IGC also has no resellers in Texas.  (*Neurauter Dec.*, ¶ 10.)

(26%) of an Arizona hospital's patients were from California and an Arizona doctor saw roughly one-hundred twenty (120) patients per week, of whom about twelve percent (12%) were California residents, no general personal jurisdiction existed over hospital or doctor in California the court), *cert. denied*, 470 U.S. 1005 (1985)).

### 3.   IGC's Website Does Not Confer General Jurisdiction

In context of websites, the Federal Circuit has found that "[a] passive website is insufficient to establish purposeful availment for the purpose of due process." *Marynard v. Philadelphia Cervical Collar Co., Inc.*, 18 Fed. Appx. 814, 816-17 (Fed. Cir. 2001); *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336-37 (5th Cir. 1999) (finding that a website was passive even though it posts information regarding a company's products and services, provides the user with printable forms, and displays the company's contact information).

In *Marynard*, the court also drew another important distinction which is relevant to the analysis here.  In that case, the Plaintiff obtained the purportedly infringing product through a third-party distributor.  *Maynard*, 18 Fed. Appx. at 817.  Applying *Asahi*, the Court found that jurisdiction was lacking, noting that merely "[i]ntroducing a product into a stream of commerce is insufficient to establish personal jurisdiction - there must be an additional act to satisfy constitutional due process requirements."  *Id.*  (citing *Asahi*, 480 U.S. at 107).  Here, while Demeter's allegations are quite vague, it appears that the alleged infringement involves "offering to sell systems that enables [*sic*] a facsimile machine to function like an e-mail client." (*Cmplt.*, ¶ 49).  This allegation alleges no facts from which the court could infer that Texas residents can access this aspect of IGC's service or how it is connected to any service offered to Texas customers.  Moreover, Texas customers can only access IGC's systems through third-party telecommunications providers over which IGC has no control, and which could be located anywhere in the world. (*Neurauter Dec.*, ¶ 12.)  Thus, this allegation is insufficient to establish general jurisdiction.  Such a finding would effectively hold that any corporation with a website is subject to general jurisdiction in every state.  Such a notion is contrary to Federal Circuit law on

personal jurisdiction.   For example, in *Trintec Industries, Inc. v. Pedre Promotional Products, Inc*., 395 F.3d 1275, 1281 (Fed. Cir. 2005), plaintiff relied heavily on defendant's use of an "interactive" website to argue the existence of jurisdiction.  The court disagreed and stated:

> *Trintec* relies heavily on Pedre's use of its own interactive website to advertise its products, which *Trintec* alleges customers in the District of Columbia can use to purchase those products from Pedre.  The difficulty is that Pedre's website is not directed at customers in the District of Columbia, but instead is available to all customers throughout the country who have access to the Internet. Thus, the ability of District residents to access the defendants' websites . . . does not by itself show any persistent course of conduct by the defendants in the District.

*Trintec,* 395 F.3d at 1281 (Fed. Cir. 2005) (remanding for further hearing when "[a]lthough the record suggests that *Trintec* made a *prima facie* showing of personal jurisdiction in the district court, that evidence is sparse and contains gaps sufficient to cause us to conclude that additional evidence is needed before a decision on jurisdiction properly can be made.") (internal quotation omitted).  If an interactive website alone was sufficient to confer jurisdiction, the Federal Circuit would have found jurisdiction to exist in *Trintec*.  But it did not, instead remanding the action to the district court for further determination of jurisdictional facts.  *Id*. at 1283.  Thus, even if Demeter had alleged sufficient facts to show that IGC's website was sufficiently "interactive," the mere operation of an "interactive website" does not automatically subject a defendant to jurisdiction nationwide.

Other jurisdictions, including the Fifth Circuit, have ruled similarly.  *See, e.g., Revell v. Lidow*, 317 F.3d at 471 ("Though the maintenance of a website is, in a sense, a continuous presence everywhere in the world, the cited contacts . . . are not in any way 'substantial.'"); *see, also, Hockerson-Halberstadt, Inc. v. Propet USA, Inc*., 62 Fed. Appx. 322, *11 (Fed. Cir. 2003) (finding Costco had no brick and mortar stores in Louisiana and Costco's interactive website was not sufficient to confer jurisdiction).

At bottom, the fact that Texas residents could purchase the purportedly infringing service from IGC in Illinois is insufficient to establish jurisdiction.  *People Solutions, Inc. v. People*

*Solutions, Inc.*, 2000 WL 1030619, *4 (N.D. Tex. July 25, 2000) ("Personal jurisdiction should not be premised on the mere possibility, with nothing more, that Defendant may be able to do business with [residents of the forum state] over its website . . ."). Any services IGC provides relating to Texas residents are provided in Illinois. Since IGC does not have, and never has had, "continuous and systematic" contacts with Texas, this court's exercise of general personal jurisdiction over IGC would not comport with due process.

### B.   IGC Is Not Subject to Specific Jurisdiction in Texas

As the Federal Circuit has noted, where, as here, the purported infringer's sales in the forum state are insubstantial and unrelated to the infringing product, exercising jurisdiction offends traditional notions of fair play and substantial justice:

> To subject a nonresident corporate defendant, such as Costco, to suit in Louisiana solely on the basis of a minuscule number of e-commerce sales that are unrelated to the cause of the plaintiff's alleged injury would, we think, render established jurisdictional boundaries meaningless. Furthermore, other organizations that operate websites accessible to online purchasers would be deprived of the ability to predict with any certainty where they would be subject to suit. Accordingly, we agree with the district court that the exercise of personal jurisdiction over Costco in this case would be inconsistent with traditional fairness considerations. We thus affirm the district court's dismissal of HHI's suit against Costco for lack of personal jurisdiction.

*Hockerson-Halberstadt, Inc.*, 62 Fed. Appx. at 448 (also finding no minimum contacts where sales were only $32,252.32 in forum state).

### 1.   IGC Had Not Purposefully Directed Its Activities at Texas

IGC has not purposefully directed any of its activities at Texas. To the contrary, its only connection with Texas is the fact that a Texas resident, like anyone else with an internet connection, can potentially receive documents from third parties, through third-party telecommunications providers, which contain facsimiles converted by IGC's servers in Illinois. (*Neurauter Dec.*, ¶¶ 5-7, 9, 12-13.) A decision to sell services over the internet to *all* potential visitors cannot be considered an action purposefully directed toward Texas. *See Trintec Indus.*,

- 11 -

*Inc.*, 395 F.3d at 1281 (stating that "the ability of [forum] residents to access the defendants' websites . . . does not by itself show any persistent course of conduct by the defendants in the [forum]").

Here, there is nothing about IGC's website which focuses on Texas residents. IGC makes no effort to drive internet traffic specifically from Texas residents to its website. (*Neurauter Dec.*, ¶ 10.) IGC has never advertised in print, electronically or through other media, specifically to Texas consumers. (*Neurauter Dec.*, ¶ 11.) As described above, the fact that Texas residents can access IGC's website does not mean that IGC has purposefully directed its activities at Texas. Merely having an interactive website is insufficient as a matter of law to confer jurisdiction in Texas.

### 2. Demeter's Claim Does Not Arise out of or Relate to IGC's Alleged Activities in Texas

Establishing a *prima facie* case still requires the plaintiff to allege facts showing the nonresident defendant's purposeful availment of the benefits and protections of and minimum contacts with the forum state. *See Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1079 (10th Cir. 1995) ("[T]he mere allegation that an out-of-state defendant has tortiously interfered with contractual rights or has committed other business torts that have allegedly injured a forum resident does not necessarily establish that the defendant possesses the constitutionally required minimum contacts."). Critically, however, as described above, the only way for a User in Texas to purchase anything from IGC is to come to Illinois, where all of IGC's services are provided. (*Neurauter Dec.*, ¶¶ 5, 6, 9.) As such, IGC sells no infringing products in Texas. To the extent that a User then makes use of IGC's services in Texas (which are in all cases through third-party telecommunications providers), this is insufficient to support jurisdiction. *cf. Helicopteros*, 466 U.S., at 417. In such instances, the defendant has had no "clear notice that it is subject to suit" in the forum and thus no opportunity to "alleviate the risk of burdensome litigation" there. *World-Wide Volkswagen Corp.*, 444 U.S. at 297 (unilateral acts of customers insufficient). Demeter's infringement claims against IGC appear to relate to allegedly infringing hardware located in

IGC's various computers and servers, all of which are located in Illinois, and not out of any fax messages or any product of IGC's that could conceivably end up in Texas. Accordingly, Demeter's claim cannot arise out of or relate to any activity by IGC in Texas. *See, e.g., Trintec Industries, Inc.,* 395 F.3d at 1282 (remanding when court did "not know whether [defendant's] sales were of infringing products"). Additionally, the ability of any Texas customer to access the allegedly infringing product or device is at least two steps removed, as it must come through third-party internet service providers which could be located anywhere in the world. There is simply no way that IGC could anticipate being haled into court in Texas based on claims of the nature Demeter alleges. IGC's Motion to Dismiss should be granted.

### 3. Asserting Specific Jurisdiction Over IGC Is Neither Reasonable Nor Fair

As explained above, the contacts between IGC and Texas are virtually nonexistent. IGC is a small business with six employees. There is no way it could reasonably expect to be haled into court in Texas on purported infringement claims based entirely on conduct taking place in Illinois, much of which is through unrelated third parties. As such, the exercise of jurisdiction by the courts in Texas does not comport with due process.

The "reasonableness" analysis is guided by the following factors: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies. *Asahi Metal Ind. Co., Ltd. v. Superior Ct. of Cal., Solano Cty.,* 480 U.S. 102, 107 (1987).

IGC's only connection with Texas is the limited number of customers who have reached out to IGC in Illinois through third parties. As described above, these "Texas" customers are not and have never been specifically targeted by IGC. Further, they are not and have never been the focus of IGC's marketing or advertising efforts. IGC's "contacts" with Texas are thus the result of fortuitous and unilateral activity by internet consumers through third-party

- 13 -

telecommunications providers, activity that is insufficient to establish personal jurisdiction. It is unfair to subject a defendant to what would amount to "nationwide personal jurisdiction" simply based on "the unilateral activity of another party." *See Red Wing Shoe Co*., 148 F.3d at 1361.

### C. Demeter Is Not Entitled to Jurisdictional Discovery

While courts sometimes permit plaintiffs to conduct jurisdictional discovery, this is never automatic. Where, as here, a plaintiff has failed to make a *prima facie* case for jurisdiction, the court is well within its discretion to refuse further discovery. *Best Van Lines, Inc*. *v*. *Walker*, 490 F.3d 239, 255 (2d Cir. 2007) (district court was within its discretion in declining to permit discovery when plaintiff had not made *prima facie* case for jurisdiction). Rather, "[w]hen a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." *Carefirst of Md*., *Inc*. *v*. *Carefirst Pregnancy Ctrs*., *Inc*., 334 F.3d 390, 402 (4th Cir. 2003) (rejecting jurisdiction based semi-interactive website where there was not "a high volume of transactions between the defendant and residents of the foreign jurisdiction"). Here, IGC is a small business with six employees that has been sued in a distant forum. Demeter offers only speculative "information and belief" allegations regarding IGC's contacts with Texas, which IGC has refuted. Unless Demeter proffers evidence substantiating IGC's contacts with Texas, IGC should be dismissed from the case.

### III. VENUE IS IMPROPER IN THE EASTERN DISTRICT OF TEXAS

IGC is also not a "resident" of the Eastern District of Texas for venue purposes. "For purposes of venue . . . a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). In patent cases, venue is proper "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). In a multi-district state like Texas, a corporation is "deemed to reside in any district in that State within which its contacts would be

- 14 -

sufficient to subject it to personal jurisdiction if that district were a separate state." 28 U.S.C. § 1391(c). Demeter agrees that IGC resides in Illinois. Since IGC is not subject to personal jurisdiction in the state of Texas, IGC cannot be considered a resident of the Eastern District of Texas. Accordingly, venue is also improper in this District and Demeter's claim must therefore also be dismissed under FED. R. CIV. P. 12(b)(3).

## CONCLUSION

IGC is a small business operated out of a house on Chicago's north side. Its only alleged connection to Texas is that it operates a website that may be accessed by residents of Texas, like anyone else in the world. IGC performs no services in Texas, and any contact with Texas residents is through unrelated third parties. As IGC has no contacts with Texas, exercising jurisdiction over it in this court does not comply with due process. Therefore, IGC respectfully requests that the court dismiss Demeter's claims against IGC for lack of personal jurisdiction.

Dated:  October 25, 2010

Respectfully submitted,

INTEGRATED GLOBAL CONCEPTS, INC.

By: _____/s/ James Heiser_____
One of Its Attorneys

Michael C. Smith
SIEBMAN, BURG, PHILLIPS & SMITH, LLP
113 East Austin
Marshall, Texas  75670
(903) 354-5514


Of counsel:

Robert J. Schneider
James M. Heiser
CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois  60603
(312) 845-3000

## CERTIFICATE OF SERVICE

I, James Heiser, an attorney, hereby certify that I caused true and correct copies of:

1.      Motion to Dismiss for Lack of Personal Jurisdiction;

2.      Declaration of John R. Neurauter in Support of Motion to Dismiss for Lack of Personal Jurisdiction; and

3.      Draft Order

to be served electronically via the Court's CM/ECF System, this 25th day of October, 2010.

Respectfully submitted,

By: _____/s/ James Heiser_____

One of Its Attorneys

2896639.01.02.doc